MARILYN E. BEDNARSKI, SBN 105322
E-Mail: mbednarski@kmbllaw.com
Kaye, McLane, Bednarski & Litt, LLP
234 Colorado Blvd., Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670


Attorneys for Defendant
LUIS TAPIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LUIS TAPIA,<br><br>Defendant. | CASE NO CR 11-1068-ODW<br><br>NOTICE OF MOTION AND MOTION; DECLARATION OF BEDNARSKI; DECLARATION OF TAPIA<br><br>Hearing Date:    May 12, 2014<br>Time:                10:00 a.m.<br><br>Trial Date:        July 29, 2014<br>Time:                9:00 a.m. |

To Plaintiff United States of America by and through Assistant United States Attorney Mack Jenkins and Cameron Schroeder:

PLEASE TAKE NOTICE that, on May 12,2014, at 10 a.m. in Courtroom 11 of the United States District Court for the Central District of California, 312 North

Spring Street, Los Angeles, California 90012,  Defendant Luis Tapia will, and hereby does, move the Court to suppress the evidence from the Honda Accord unlawfully stopped on June 21, 2014 as well as the unlawful fruits of that stop.  A list of evidence seized is attached hereto as Exhibit B and Exhibit C.

This Motion is brought under Federal Rules of Criminal Procedure, Rule 12(b), and Rule 41(h) and is based upon the attached Memorandum of Points and Authorities filed concurrently herewith, and Declarations of Bednarski and Tapia such witnesses, testimony and other evidence as may be presented at the time of the hearing on this Motion.

DATED: April 14, 2014                     Respectfully Submitted,

KAYE, McLANE, BEDNARSKI & LITT LLP

By:___/S/ Marilyn E. Bednarski_____
   Marilyn E. Bednarski
   Attorneys for Luis Tapia

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................................... 1

    A.    THE RELEVANT CHARGES ............................................................. 1

    B.    FACTUAL BACKGROUND ............................................................... 3

III.  LEGAL ARGUMENT ..................................................................................... 5

    A.    MR. TAPIA HAS STANDING TO CHALLENGE THE SEARCH .......................................................................................... 5

    B.    IT IS THE GOVERNMENT'S BURDEN TO ESTABLISH THE CONSTITUTIONALITY OF A WARRANTLESS SEARCH AND SEIZURE ................................................................. 5

        *1.    THE STOP OF THE CAR VIOLATED THE CONSTITUTION ..................................................................... 6*

        *2.    THE SO CALLED SEARCH INCIDENT TO ZAMORA'S ARREST AND INVENTORY SEARCH WAS UNLAWFUL .................. 8*

            *A.    The Search At The Site Of The Stop Cannot Be Justified As An Inventory Search .................................................. 8*

            *B.    The Search At The Site Of The Stop Cannot Be Justified As Incident To Zamora's Arrest ................................... 8*

        *3.    THE FACT THAT THE POLICE USED A DOG TO SNIFF BEFORE OBTAINING A WARRANT TO SEARCH FOR A HIDDEN COMPARTMENT DOES NOT SALVAGE THE SEARCH ........................................................................... 9*

        *4.    BECAUSE MR. TAPIA'S CAR WAS STOPPED ILLEGALLY, THE IMPOUND OF HIS CAR WAS INVALID, AND ANY SUBSEQUENT SEARCH OR OTHER FRUITS MUST BE SUPPRESSED AS FRUIT OF THE POISONOUS TREE ........................................................................... 10*

IV.   CONCLUSION. .......................................................................................... *11*

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

Supreme Court

*Arkansas v. Sanders*,

442 U.S. 753( 1979) ....................................................................................5

*Chimel v. California*,

395 U.S. 752 (1969) ....................................................................................9

*Florida v. Wells*,

495 U.S. 1 (1990) ....................................................................................6

*Mincey v. Arizona*,

437 U.S. 385 (1978) ....................................................................................6

*Rakas v. Illinois*,

439 U.S. 128 (1978)....................................................................................5

*Segura v. United States*,

468 U.S. 796 (1984) ..................................................................................10

*South Dakota v. Opperman*,

428 U.S. 364 (1976) ....................................................................................8

*Terry v. Ohio*,

293 U.S. 1 (1968) ....................................................................................6

*United States v. Jeffers*,

342 U.S. 48 (1951) .................. .....................................................................5

*Whren v. United States*,

517 U.S. 806 (1996) ....................................................................................6

*Wong Sun v. United States*,

371 U.S. 471 (1963)................................................................................10-11

iii

Federal Courts

*United States v. Alexander*,
   448 F.3d 1014  (8th Cir. 2006), *cert. denied*, 549 U.S. 1118 (2007)..............9

*United States v. Barajas-Avalos*,
   377 F. 3d 1040 (9th Cir. 2004)....................................................................10

*United States v. Emens*,
   649 F.2d 653 (9th Cir. 1980).........................................................................5

*United States v. Kovac*,
   795 F.2d 1509 (9th Cir. 1986).......................................................................5

*United States v. Madrid*,
   152 F. 3d 1034 (8th Cir  1998).....................................................................10

*United States v. Michael R.*,
   90 F.3d 340 (9th Cir.1996).............................................................................6

*United States v Lopez–Soto*,
   205 F.3d 1101 (9th Cir. 2000).........................................................................6

*United States v. Olivera-Mendez*,
   484 F.3d 505 (8th Cir. 2007)..........................................................................9

*United States v. Vasey*,
   834 F. 2d 782 (9th Cir. 1987).........................................................................9

## I.     PRELIMINARY STATEMENT

This motion is made under the Fourth Amendment on the grounds that the items found inside Tapia's Honda Accord,  after Oxnard police officer Cook executed a pretext stop on the car.  The officer made up a non-existent traffic stop as justification  for stopping the car the night of June 21, 2011.  That stop lead to the officers searching the interior of the car while it was stopped on Channel Islands Blvd.  Those officers also brought a K9 unit in to sniff the interior of the car, and the dog alerted on an area next to the rear passenger seat. The next day after Detectives obtained a warrant to again search the interior of the car, they found narcotics, guns and money in a false compartment next to where the dog alerted.

The unlawful stop without a warrant violated the Fourth Amendment prohibition against warrantless searches and seizures. The subsequent searches on Channel Islands Blvd. and at the police tow yard were fruit of this unlawful stop and must also be suppressed.  The government bears the burden of justifying a warrantless seizure of personal property.  If it fails that burden, the evidence must be suppressed.

## II.    STATEMENT OF FACTS

### A.     THE RELEVANT CHARGES

Mr. Tapia is charged in Counts 1[1] through 21, 24 and 29 of a 29 count Indictment. Certain of these counts directly allege the contraband evidence seized in the search that is challenged.  However all counts in the Indictment are affected if the evidence is admitted and considered by the jury.  The illegally seized evidence will have a prejudicial effect on the other counts regardless whether Mr. Tapia is acquitted on the counts on which this challenged evidence is direct evidence.  Thus, the below summary addresses the counts directly affected, but

---

[1]     Overt Act 26 of Count one specifically references the evidence discovered in the automobile stop of the Honda on June 21, 2011.

1

does not imply by omission that the entire indictment and trial would not otherwise be affected.

Count 1 alleges a violation of 21 U.S.C. §846, Conspiracy to possess and distributed at least a kilogram of heroin, over 50 grams of methamphetamine and at least ½ kilogram of cocaine.

Counts 9[2], 10[3], and 11[4], allege substantive violations of Title 21 U.S.C. §841, specifically the narcotics seized in the search of the false compartment of the car on June 22.

Count 12[5], alleges a violation of Title 18 U.S.C. §924c(1)(A) for use and carry of a firearm during a drug trafficking crime, specifically two weapons seized in the search of the false compartment of the car on June 22.

Count 13 alleges a violation of the felon in possession statute  Title 18 U.S.C. §922(g)1for possession  of the Smith and Wesson found in the false compartment.

Finally Count 29 alleges a continuing criminal enterprise in violation of Title 21 U.S.C. §848 beginning on "a date unknown and continuing to on or about October 25, 2011 (when Mr. Tapia was arrested).

In addition the government has filed two sentencing enhancement documents under Title 21 U.S.C.  §851, which would, in the event of Mr.Tapia's conviction on any of Counts 1, 9, or 10, trigger a mandatory life sentence.

---

[2]     Specifically Count 9 alleges the unlawful possession of the 1.13 kilograms of heroin discovered in the Honda's hidden compartment.

[3]     Specifically Count 10 alleges the unlawful possession of the 234 grams of methamphetamine discovered in the Honda's hidden compartment.

[4]     Specifically Count 11 alleges the unlawful possession of the 532 grams of cocaine discovered in the Honda's hidden compartment.

[5]     Specifically Count 12 alleges a violation of 18 USC §924c based on the Smith and Wesson and Taurus firearms discovered in the Honda's hidden compartment. Count 13 alleges Mr. Tapia to be a felon in possession of the Smith and Wesson found in the compartment.

**B.    FACTUAL BACKGROUND**

The Oxnard Police reports disclosed in discovery provide the police officer's version of events. [6] On June 22, 2011 at about 10 p.m. Oxnard Police Officers Cook and Ehrhardt were working in the area of Ventura Road and Channel Islands Blvd, and were watching out for the Honda Accord that is the subject of this Motion.  The report does not state who told them to watch out for the car, or what else they were told, and although the reports are silent on that point, the situation suggests that they were put up to this pretext stop by the narcotic's officers investigating Tapia for some months prior.

Officer Cook's report starts by describing that he and his partner saw the car driving northbound on Ventura Road approaching the intersection of Ventura Road.  As the officers caught up to the car, they noticed the rear license plate lamp appeared to be malfunctioning and not illuminating the rear license plate.  They were able to read the plate from the light of their own headlights.  The Honda merged into the left turn lane for westbound Channel Islands Blvd. Traffic slowed and the Honda stopped for a red traffic signal.  When the light turned green the officers activated the siren and stopped the Honda "for 24601 V.C. for the malfunctioning rear license plate lamp." The Honda pulled over to the right hand side of the roadway on Channel Islands Blvd.

Officer Ehrhardt contacted Diana Zamora who was driving.  He thought she looked under the influence, so he had her get out of the car, and ran her through the "seven step drug abuse recognition evaluation."  He concluded she was under the influence and arrested her pursuant to California Health and Safety code §11550. He explained that he thereafter searched the car as an "inventory search incident to

---

[6]    The discovery provided by the government to date in this case contains police reports from the Oxnard Police Department relative to the stop of the Honda Accord.  A summary of those reports is contained here to give context to the motion.  It is the government's burden to set forth its factual basis and justification for the searches.  The undersigned expects that many of the facts and conclusions in the police report will be in dispute.

3

her arrest" for being under the influence.  The officer found a yellow paper bag containing a rubber glove and clear plastic bag with three bindles of methamphetamine inside in the map pocket of the driver's door.  A further search of the door pocket revealed a methamphetamine pipe.  He searched Zamora's purse which was sitting to the right of the driver's seat and found some marijuana, a scale with white residue on it, and three yellow pills. Exh B. pp 1-3, Oxnard Police Report List of Items.

After finding this narcotic's evidence, the police initiated a K-9 search of the interior of the car using a trained narcotics sniffing dog.  The dog alerted on the rear passenger side of the car, just below the rear passenger window.  The car was towed and stored by the Oxnard police.

The next day Detective Serrato applied to a local superior court judge and obtained a search warrant for the interior of the Honda.  Exh C, Search Warrant pp. 1-10.  Detective Serrato's affidavit described the [purported] traffic stop, the discovery of the driver Zamora under the influence, her arrest for being under the influence, the inventory search revealing the bindles of methamphetamine (24.8 grams), the dog alert on the right rear passenger side etc.  Exh. C p. 6. The officer explained that because of the 24.8 grams found, he believed the search of the location where the dog alerted would reveal methamphetamine, cutting materials, and paraphernalia used in the sales and packaging of methamphetamine.  Exh. C p. 7. He also sought permission to search for weapons.  Exh. C p. 8. The warrant was granted but modified with the judge limiting the search to narcotics evidence but not weapons.  Exh. C,  p. 8.

The search pursuant to that warrant revealed in a hidden compartment below the right passenger window several items including 234 grams of methamphetamine; 1.13 kilograms of heroin; 532 grams of cocaine; a loaded Taurus .38 caliber revolver; a loaded Smith & Wesson 9mm handgun; two Smith & Wesson 9mm high-capacity magazines; 50 rounds of .45 caliber ammunition; 51

rounds of .357 caliber ammunition; 35 rounds of .380 caliber ammunition; five rounds of .38 caliber ammunition; one shotgun shell; six rounds of 9mm ammunition; and $10,020 in cash. Exh. C,  p. 11-15.

That June 22 search of the passenger compartment revealed additional seized items including and not limited to paperwork including some medical consent paperwork for Luis Tapia, a child support service card and receipt for child support in his name, a cell phone, a box of blue latex gloves and a black notebook with pay and owe sheets in a laptop bag (found in the trunk).  *Id.*

## III.   LEGAL ARGUMENT

### A.   MR. TAPIA HAS STANDING TO CHALLENGE THE SEARCH

In order to contest the legality of a search or seizure, the defendant must establish that he or she had a "legitimate expectation of privacy" in the place searched or in the property seized. *Rakas v. Illinois*, 439 U.S. 128, 143-44, 58 L.Ed. 2d 387, 99 S. Ct. 421 (1978).  *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986).  Mr. Tapia's declaration is attached and establishes that he was the owner of the car.  See Decl. Tapia. As such, he has standing to challenge the unlawful search.

### B.   IT IS THE GOVERNMENT'S BURDEN TO ESTABLISH THE CONSTITUTIONALITY OF A WARRANTLESS SEARCH AND SEIZURE

Once the accused establishes that a warrantless search occurred and that he has standing to challenge the search, the burden shifts to the government to establish that the search was within one of the well-delineated exceptions and that it was reasonable.  *See United States v. Emens*, 649 F.2d 653, 657 (9th Cir. 1980). Warrantless searches and seizures are *per se* unreasonable and that the Government bears a heavy burden to justify dispensing with the warrant requirement of the Fourth Amendment.  *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586, 2591, 61 L. Ed. 2d 235 (1979) (" "the burden is on those seeking the exemption to show the need for it.' *United States v. Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59

(1951)."); *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

If the government fails to establish factually and legally that the search was lawful, the evidence seized as a result must be suppressed. *See Terry v. Ohio*, 293 U.S. 1, 12 (1968)("Ever since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct.")

### 1.   *THE STOP OF THE CAR VIOLATED THE CONSTITUTION*

In order for the stop of the vehicle to be lawful, the police had to have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).  Even in the case of a "pretextual" traffic stop pursuant to *Whren v. United States*, 517 U.S. 806 (1996) the police officer has the initial burden of production. That is, the burden of providing "specific, articulable facts" to believe that Mr. Tapia had violated the traffic laws.  *See, Terry v. Ohio,* 293 U.S. 1, 21 (1968); *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996); *United States v Lopez–Soto*, 205 F.3d 1101, 1104-5 (9th Cir. 2000). Where, as here, the police officer fails to provide "specific, articulable facts," the traffic stop, even under *Whren*, is invalid.

The purported justification for the stop at that point was the "inoperable" rear plate light, an assertion the defendant challenges.  He had personal knowledge that the rear plate light was in working order that night.  His declaration attached hereto as Exhibit A sets forth  in ¶4that:

"The rear license plate bulb [in] his car worked on June 21, 2011.  I had shortly before that day purchased a new bulb and replaced the bulb for the light that illuminated the rear plate on my Accord.  Therefore I know the light was in working order.  The officer's claim in the report that it was inoperable at the time of the stop is not true."

Thus, it is Mr. Tapia's position that the police lacked the specific articulable basis to establish that a traffic law had been broken because the car was driving lawfully generating no reason for the stop, and the car rear plate light was in working order. Once the officer stopped the car without a lawful justification, from that point on everything was the fruit of that unlawful stop.

Here what appears to have really happened was that the Oxnard patrol car that made the stop was put up to it by narcotics officers who had been investigating Tapia for months. Those agents, believing that the car contained evidence of a drug deal, wanted to search it and seize the evidence they thought was inside. The narcotics agents did not have a warrant and could not otherwise have simply stopped the car. But instead of getting a warrant, they asked the black and white patrol car to stop the Honda. The officers wanting to help out the narcotic's officers were probably looking for a moving violations, the usual justification in this scenario, but saw none.

Of course hours later when the police report is written a story is told that the Honda accord was in violation of the traffic law requiring that the car have an operable light illuminating the rear license plate. Cal. Vehicle Code §24601. But that was untrue. The rear license plate bulb his car worked on June 21, 2011. Decl. of Tapia at ¶ 4. He had shortly before that day purchased a new bulb and replaced the bulb for the light that illuminated the rear plate on his Accord. Decl. Tapia. He therefore knew that the light was in working order. *Id.* The officer's claim in the report that it was inoperable at the time of the stop is not true. *Id.* Mr. Tapia's declaration contradicts the written report of the local police officer. It is important to note that the officers who apparently had a camera available to take pictures of the contraband they found, took no pictures, or video, of the purported light deficiency. That is because it did not exist.

**2.      *THE SO CALLED SEARCH INCIDENT TO ZAMORA'S ARREST AND INVENTORY SEARCH WAS UNLAWFUL.***

**A.      *The Search at the Site of the Stop Cannot be Justified as an Inventory Search.***

Mr. Tapia was not arrested and was not under the influence. He was a passenger in the car, and there is no reason why he could not drive the car away. An inventory search is an administrative process attaching to when police must impound a car and protects the property owner against loss of property, police against false claims of loss of property, and the police against danger.

It is the government's burden to show that the search was conducted according to standardized criteria. *Florida v. Wells*, 495 U.S. 1, 4 (1990); *South Dakota v. Opperman*, 428 U.S. 364, 375-6 (1976).   Given that an able bodied adult was present and could drive the car from the roadway without it having to be left there on Channel Islands Blvd.  An impound was not justified.  For these reasons, the search of the compartment as a so called inventory search fails.

**B.      *The Search at the Site of the Stop Cannot be Justified as Incident to Zamora's Arrest .***

Nor can the search of the interior of the car at the site of the stop be justified as "a search incident to arrest and an inventory search."  The officer's report notes that once Zamora was taken out of the car, Officer Cook ran her through his street tests to determine if she was under the influence.  Presumably he took her to the side of the road, as Channel Islands Blvd. -- immediately west of the intersection of Ventura Road -- has substantial traffic. It would not have been safe for either of them to stand next to the driver's door and next to speeding traffic while he ran his seven step tests.  This is the logical conclusion that they stepped away from the roadway, over on the curbside, in front of or behind the car.   As such Zamora would not have been in the immediate vicinity of the interior of the automobile and would not as a practical matter have been in proximity to reach anything in the

passenger compartment.  It is further likely that she was handcuffed upon being arrested for being under the influence, another factor that would make it impossible for her to have been able to reach anything inside the passenger compartment.

The justification for search incident is limited by temporal and proximal reach.  *Chimel v. California*, 395 U.S. 752, 763 (1969) (construing the "immediate control" of arrestee requirement to mean "the area from which [the arrestee] might gain possession of a weapon or destructible evidence"); *United States v. Vasey*, 834 F. 2d 782 787-88 (9th Cir. 1987)(search invalid as incident to arrest where took place 30-45 minutes after arrest and handcuffed and placed in squad car and not in control of area searched).  In sum, the passenger compartment search cannot be justified as incident to Zamora's arrest as claimed in the police report.

### 3.     THE FACT THAT THE POLICE USED A DOG TO SNIFF BEFORE OBTAINING A WARRANT TO SEARCH FOR A HIDDEN COMPARTMENT DOES NOT SALVAGE THE SEARCH

Officer Brisslinger apparently brought his K9 to sniff the car before the agents obtained a warrant to search for a hidden compartment. It is true that dog sniffs of the exterior of a vehicle are not searches under the Fourth Amendment. *See United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007).  But the search of an interior is different, it is a private area.  Moreover, the dog sniff was the product of an unconstitutional seizure, because the events that preceded it violated the Fourth Amendment.  See *United States v. Alexander*, 448 F.3d 1014, 1016 (8th Cir. 2006), *cert. denied*, 549 U.S. 1118, 127 S. Ct. 929, 166 L. Ed. 2d 715 (2007) (*citing Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005))( Fourth Amendment  violated by unreasonably prolonged traffic stop before the K9 was employed).

9

### 4. *BECAUSE MR. TAPIA'S CAR WAS STOPPED ILLEGALLY, THE IMPOUND OF HIS CAR WAS INVALID, AND ANY SUBSEQUENT SEARCH OR OTHER FRUITS MUST BE SUPPRESSED AS FRUIT OF THE POISONOUS TREE.*

Because Mr. Tapia's car was stopped illegally, the impound of the car, and any subsequent search or other fruits must be suppressed as fruit of the poisonous tree. "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *Segura v. United States*, 468 U.S. 796, 804 (1984) (citations omitted). "It 'extends as well to the indirect as the direct products' of unconstitutional conduct." *Id. (quoting Wong Sun v. United States*, 371 U.S. 471, 484, (1963)).

All of the evidence that is the subject of this Motion (listed in Exhibits B & C) is the fruit of the illegal traffic stop addressed above.  Similarly, it was only after the illegal stop of his vehicle, that officers were able to observe certain items of contraband in the passenger compartment of the car such as the methamphetamine pipe and bindles containing 24.8 grams methamphetamine. Exh. B. The next day, after impounding the officers sought a warrant from a local judge to search for hidden compartments.  Exh. C, pp. 1-10.

If a subsequent application for a warrant is based on information gained illegally obtained, it is the government's burden to prove an independent source. *United States v. Madrid*, 152 F. 3d 1034, 1041 (8th Cir  1998); *United States v. Barajas-Avalos*, 377 F. 3d 1040, 1058 (9th Cir. 2004)(searched valid although affidavit included information gained illegally, because probable cause shown to exist without considering the illegal observations made by officers).  Here that is exactly what happened, The search warrant was sought entirely based on the facts of the stop the night before.  There was no other evidence submitted for the court to consider beyond the facts of the stop the night before.  Exh. C, pp 1-10.  All evidence thereafter discovered in the false compartment constitute fruits of the

illegal stop and/or the illegal search of the passenger compartment must be suppressed as fruits of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484.

## IV. CONCLUSION.

It is the government's burden to justify warrantless searches by valid exceptions to the warrant requirement. Here everything started with the illegal pretext traffic stop of the Honda. If that was illegal, the subsequent acts that followed were the fruits of that illegal stop and must be suppressed.

Even if the traffic stop were found to be lawful, the officer's subsequent justification for the passenger compartment fails as it was not a lawful search incident to arrest and inventory search. See Exh. B, pp. 1-3, Evidence Receipt.

Finally the warrant to search the car further obtained June 22 is fatally tainted by inclusion of information the officers illegally obtained in the stop on June 21. There is no independent justification to support the warrant and therefore the discovery of the evidence in the false compartment and in the passenger compartment must be suppressed. See Exhibit C, pp. 11-15, Evidence Receipt.

DATED: April 14, 2014          Respectfully Submitted,

KAYE, McLANE, BEDNARSKI & LITT LLP

By:___/S/ Marilyn E. Bednarski_____
Marilyn E. Bednarski
Attorneys for Luis Tapia