UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE OTIS D. WRIGHT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

United States of America,          )
                  PLAINTIFF,       )
                                   )
VS.                                )   NO. CR 11–1068 ODW
                                   )
Jaime Cardenas,                    )
                  DEFENDANT,       )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, APRIL 30, 2012

_____

KATIE E. THIBODEAUX, CSR 9858
U.S. Official Court Reporter
312 North Spring Street, #436
Los Angeles, California 90012

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

APPEARANCES OF COUNSEL:

ON BEHALF OF THE PLAINTIFF, UNITED STATES OF AMERICA:

                    U.S. DEPARTMENT OF JUSTICE
                    U.S. ATTORNEY'S OFFICE
                    BY: MACK JENKINS, AUSA
                    312 North Spring Street
                    Twelfth Floor
                    Los Angeles, CA  90012

ON BEHALF OF THE DEFENDANT:

                    YOLANDA BARRERA LAW OFFICES
                    BY: YOLANDA BARRERA
                    421 East Huntington Drive
                    Monrovia, CA 91016

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES, CALIFORNIA; MONDAY, APRIL 30, 2012

11:04 A.M.

- - - - -

THE CLERK:  Calling Item 3, CR 11-1068, United States of America versus Jaime Cardenas.

Counsel, may I have your appearances, please.

MR. JENKINS:  Good morning, your Honor.  Mack Jenkins on behalf of the United States.

THE COURT:  Mr. Jenkins, good to see you again.

MR. JENKINS:  Good to see you, your Honor.

MS. BARRERA:  Good morning, your Honor.  Yolanda Barrera appearing with Jaime Cardenas who is present ready for sentencing.

THE COURT:  Ms. Barrera, good morning.  Welcome.

Mr. Cardenas, good morning, sir.  We are here for your sentencing.  First of all, have you, sir, seen a copy of the presentence investigation report prepared by U.S. Probation?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Good.

And I -- well, actually, I assumed so because your attorney has made certain objections to various provisions in that report that obviously came from input from you, but I just wanted the record to be clear.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

So along with the presentence investigation report, the court has also once again reviewed the plea agreement.  I paid particular interest as to the factual statements in the plea agreement, and I have looked at the government's position papers and the defendant's position papers, its objections and various exhibits attached to the position papers.

Okay.  On February 16th of this year, Mr. Cardenas plead guilty to Count 2 of the indictment charging a violation of Title 18, United States Code, Section 371, conspiracy to engage in the business of dealing in firearms without a license.  This carries a base offense level of 12.  To that, two levels have been added under 2K2.1B1A because three to seven firearms were involved.  Two levels were deducted for a so-called minor role in the offense and yet a further two levels for acceptance of responsibility bringing us to a final offense level of 10.

Based upon 15 criminal history points, he falls within criminal history category 6, but, again, counsel is of the view that that is overstated.  But, as it stands, with an offense level of 10 and a criminal history category of 6, the recommended sentencing range is 24 to 30 months.

Now, before we get into any further

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

adjustments based upon objections, et cetera, are we in agreement so far with the calculation of the recommended sentencing range? Mr. Jenkins?

MR. JENKINS: Yes, your Honor.

THE COURT: Ms. Barrera?

MS. BARRERA: Yes, your Honor.

THE COURT: All right. Now, we will move into your objections, Ms. Barrera.

All right. Your first objection to the contents of the presentence investigation report is that -- well, you are saying that the indictment does not allege that Mr. Cardenas sold firearms on behalf of the FTO.

MR. JENKINS: Firearms Trafficking Organization, your Honor.

THE COURT: But that isn't the way it was referred to as I recall. Wasn't it DTO?

MR. JENKINS: It was alternately referred to as both. This organization both trafficked in drugs and firearms.; At times it is referred to as the FTO or DTO.

THE COURT: Okay. All right. Tell you what. What I did to make things really easy in this regard -- and I am surprised that Ms. Barrera you didn't do likewise because in your very next paragraph you make reference to the factual basis as set forth in the plea

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

agreement, and that is, in fact, where I went.

I went to Paragraph 9 which is the factual basis in the plea agreement, and it seems to me that this is what is alleged in the factual basis, and he has admitted to that.  So I am not certain that this is really an argument worth having, is it?

MS. BARRERA:  I don't think it is significant, your Honor.  I was referring to the fact that the probation officer mentioned in the report that those were the charges, but it is not a significant point.

THE COURT:  Beginning on a date unknown and continuing to October 25th, 2011, defendant Jaime Cardenas, and various aliases, and co-defendants in a firearm trafficking organization conspired to unlawfully traffic in firearms without a license.  And Mr. Cardenas would assist the FTO in this firearms trafficking by, among other things, transporting a codefendant who was the leader of the FTO to attend meetings with prospective buyers in transporting firearms.  Actually, the indictment didn't simply just say leader, it named Mr. Tapia by name.

So you are walking away from this one?

MS. BARRERA:  I am, your Honor.

THE COURT:  Okay.  Let's move on to the next one.

And you indicate in the factual basis of the

plea agreement, Mr. Cardenas admitted that he and a codefendant violated the law not that he and Tapia did so.  Okay.

Are we really going to have a discussion on this one?

MS. BARRERA:  Your Honor, I would ask that the presentence report be corrected.  The reason for that is more of a safety issue, your Honor.  It is not whether that's correct or not.

THE COURT:  Okay.  Because I read the indictment, and aside from the fact that both the complaint and the indictment read like it is all about Mr. Tapia, it is quite clear that the allegation is that Mr. Tapia was escorted around by Mr. Cardenas and Mr. Tapia was assisted in various functions by Mr. Cardenas.  But it appears now that Mr. Cardenas wishes to walk away from Mr. Tapia and pretend that he doesn't know him.

MS. BARRERA:  No, your Honor.  That is not what this is about.

THE COURT:  I was hoping it would be because later on we are going to get to whether or not he wants to walk away from Colonia.

MS. BARRERA:  He does want to walk away from that, your Honor but not -- it is not a situation where he is in court today pretending that he wasn't there and

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

pretending he doesn't know these individuals.

He has been fully cooperative with respect to his involvement, whom he was involved with. This is a safety issue in prison.

THE COURT: Okay. Then, that is a different discussion.

MS. BARRERA: It is, your Honor.

THE COURT: And I am much more receptive to that than simply saying, well, it doesn't say that and don't have him associated with Tapia when he really wasn't. That is kind of absurd. But if you are saying that we need to make some adjustments to the PSR for his safety, I am all for that.

MS. BARRERA: That is all that I am saying, your Honor.

THE COURT: All right. Then, tell you what. Well, let's see. We are going to do it now. All right. Where do we start.

MS. BARRERA: The references I saw were on Page 5, Paragraph 15 and Paragraph 17 and 19.

THE COURT: All right. You would just simply like to have it changed to codefendant or a codefendant?

MS. BARRERA: Correct.

THE COURT: Mr. Jenkins, do you have any issue with this?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

MR. JENKINS:  No, your Honor.  Based on those same concerns the court expressed, but my understanding was Ms. Barrera wanted to change it for safety reasons.  And we don't object to that.

THE COURT:  I will contact probation at the conclusion of this hearing, and I will have her go through and wherever Mr. Cardenas is mentioned in conjunction or in connection with Mr. Tapia, we will have that rewritten to codefendant, an unnamed codefendant.  Okay.  All right.  I have no problem with that.  Done.

MS. BARRERA:  Thank you.

THE COURT:  I know your next -- let me see.  You did -- there was one, Page 7, regarding the wiretaps, et cetera.  It is a different case.  The government has indicated that it is a different case.  So No. 5 isn't an issue.  No. 4 isn't really an objection.  It is just simply pointing something out for clarification.  Same thing with No. 3.  Okay.  Those aren't really substantive.

But you do believe that his criminal history of 6 is overstated, and you are arguing for a 3.  That is really quite substantial.

MS. BARRERA:  Your Honor, I am asking for a 6 month reduction or variance based on several grounds.  One of them is that the criminal history is

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

overrepresented.  I do believe that based simply on the criminal history being overrepresented, I believe that that is warranted, but I do have some additional arguments relating to his minimal participation, the offense level being overstated, his background.

If I could just start very briefly with the --

THE COURT:  Did you also say the offense level in your opinion is overstated?

MS. BARRERA:  No.  The resulting offense level which ties in with the criminal history being overstated, I believe that results in too much time for what he did. And that ties in with the, you know, Items 3, 5 and 6 which I noted for clarification in terms of what did he really do.

Several of these arguments overlap.  For example, the argument of minimal participant overlaps with the argument that I made with the offense level overstating his culpability which overlaps with the criminal history being overstated.

THE COURT:  But the offense level also takes into account a role adjustment for a minor role in the offense.

MS. BARRERA:  It does, your Honor.  I believe that he is a minimal participant, not simply a minor role. And the reason that I believe that he is minimal is

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

because his participation in this case was basically that he transported a codefendant in this case, Mr. Tapia, to a hotel room where Mr. Tapia was going to sell guns to an informant.

My client did not obtain those guns. In other words, he didn't steal them or buy them to have them resold. They weren't his. He did not negotiate for the sale of those guns. He did not, in any way, benefit monetarily from the sale of those guns. He was there. He was with Tapia. He did transport him. He is culpable for his participation. But the question is does that go to minimal or does that go to minor? And I would suggest to the court that given his participation in this case that it is minimal, not simply minor, particularly when one factors in what else he did.

Now, the government says, well, he did do other things. He offered to sell a bulletproof vest to Tapia. He was in a car on a previous occasion when Tapia was talking to the informants about selling drugs, and that is why I put in the clarification. It is true. He was there. He has not denied being there, but he was sitting in the car watching Mr. Tapia's young child.

THE COURT: So he was like the nanny.

MS. BARRERA: In a sense, for that day, your Honor. He wasn't negotiating for the sale of drugs. He

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

wasn't negotiating for sale of firearms.

There was a wiretap in this case, and, at first, the government believed that my client was intercepted and that he was talking about drug sales. And I received a list of approximately 15 conversations where the government believed that he had been intercepted, and that was a mistake.

He was not intercepted selling drugs, negotiating for drugs. He wasn't involved in drugs at all. His participation was as I have just stated. So the question is is that a minor participant or is that a minimal participant.

That argument ties in with my argument about the criminal history being overrepresented as well because my client has a very long criminal history, and we acknowledge that. But, typically, someone who is in criminal history 6 is an individual who has five serious felony convictions. As this court knows, three points for each serious felony conviction. So that would put that individual at criminal history 6.

My client has convictions for some things that normally individuals would not receive points for. But he received points. For example, fighting in school. He has convictions for that twice. They were not serious fights in the sense of weapons being used. The teacher

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

had already stopped the fight by the time the police arrived, but he got points for that.

He received several points for things like having a spray can in his hand, for having tennis shoes that had a star on it because that is a Dallas Cowboys insignia which is also related to the Colonia Chiques, for talking to his cousin on one occasion because that was a violation of the gang injunction.

I am not saying that he shouldn't be punished for those things. He was punished. I am not saying that it was improper for the police to have arrested him and charged him with a violation of the gang injunction. They were violations of gang injunction, and I have no objections to that. However, I don't think that we can equate those convictions with someone who has a very serious drug felony, for example, or a serious firearms felony, selling of drugs, smuggling of firearms, smuggling of drugs, smuggling of aliens.

I just don't think a conviction for cutting off his monitoring device equates to something like that. Now --

THE COURT: He really does flaunt authority, doesn't he. He doesn't really care about court orders, does he. That is a little disturbing. So a Ventura County Superior Court judge issues an order, and he could

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

care less.

He is given the benefit, actually, of electronic monitoring.  He just cuts that off.  This sounds like someone completely out of control that we can impose all kinds of restrictions on him, but he will disregard them, that the only way to control him is to lock him up.

I am just wondering.  And when we -- he is also escalating, and I know you have mentioned that with criminal history category 6 we are generally talking about the drug dealers and acts of violence, et cetera.  And the biggest thing about drugs from my perspective is the harm that it does to the community.  It just completely destroys the individual, the fabric of the family and community.

But, now, he is dealing with weapons, and that pretty much does the same thing but it does it almost instantaneously.  And given the fact that he is also a member of this extremely large and particularly violent street gang and they are trafficking in firearms, this now has my attention.  Okay.  This isn't something you can just shrug off.

A defense attorney in I guess one of the other codefendants sent me a link to a website.  I couldn't believe it.  They have got their own website.  They have

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

got rap CD's.  It is almost like a movie video, but these are some scary people.  I mean, they really are.

And I don't know.  It is as though he is completely undeterred.  He gets arrested, tried, convicted, punishment is meted out, and I mean, immediately, he goes right back to what he was doing.  All right.

I am going to tell you something else.  In reading your papers as well as his letter, what I never saw, other than he has a brand new child which he didn't get a chance to see his child being born, other than that, I don't see that anything has changed.  Why should we expect that suddenly he is going to be a different person?

I read his letter a couple of times.  The second time, I was looking to see whether or not he had given any indication of disassociating himself from this organization.  I didn't see that.  I didn't even see anything that might lead one to believe, you know, that that was his intention.  So that being the case, if he is going to remain affiliated with this criminal organization, then what are we doing?  What has changed in his environment, in terms of a support group?  What has changed that would make me believe that he is going to change?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

MS. BARRERA:  I can understand the court's concerns, and they -- honestly, your Honor, they were my concerns as well when I first met my client.  I have spent a lot of time talking to him because this is the first time in 32 years that I have been a criminal defense attorney that I have had a 19-year-old in criminal history 6.  And I was very curious, frankly, to see, is this just someone who can't obey rules, doesn't want to obey rules, or are there other factors at work.

I concluded, your Honor, that there are a lot of factors out there that have caused him to be who he is.  Primarily, the fact that, as I mentioned in my papers, he grew up without a father.  His mother was unable or unwilling to give him even basic advice.

In many ways, I found myself being almost, in addition to being his defense attorney, giving him advice that I think his mother should have provided to him.  He was basically abandoned, mentally, emotionally, and he ran right into the arms of those individuals who were willing to love him unconditionally, he believed.  And that was the gang.

What has changed is that he has now recognized that is not who these individuals are.  That is what he thought when he was in the community.  He thought they were his family.  He thought they loved him.  He thought

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

they were there for him, they would always be there for him.  And he is in custody now for the first time in an adult prison, and not only is this an eye opener, it is an eye opener for anyone arrested in federal court.  But it has been mentally an eye opener for the client to see where he was going and who he was doing some of these things for and how these individuals were not there for him.  They will never be there for him.

And the only individuals that have been there for him are his girlfriend who is in court today and has the newborn child.  The child is now 6 months old.  He still hasn't been able to see his child.  For the first time, he has seen his child in court.  That hit him hard.

And some of the things that I think we take for granted being outside of prison, things like just seeing children, having people love you are things that he has been denied for the last six months for good reason.  And I say for good reason not just because it was justified, but I think that that has had a major impact on him.

He told me a story, your Honor, that I would like to share very briefly because I think it goes to the issue of what we are talking about, and that is how he got his diploma, his high school diploma.

As your Honor knows from the pleadings, he has

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

ADHD.  School has been much of a struggle for him on top of all the other problems that we have already discussed. But a probation officer believed in him, and a probation officer told him I know you can do this, here is the book, study, you can do this.  And he -- this person had confidence in him.  And he did it for that person.  He didn't even do it for himself.  He did it because somebody had faith and confidence in him, and he found out in the process that he can be a different person.

He has never had the love, attention, the faith of anyone except negative influences.  Now, he does.  Now, he has -- and I am not talking about his girlfriend and his son.  He has himself, your Honor.  He has himself that he wants to be a better person because he knows, he has found out that he can be a good person, that he can do the right thing, something that he never believed before he got into federal custody.

I am not asking the court to excuse his conduct.  That is why I am not asking for less than 18 months.  Because he needs to be punished.  He needs to have impressed upon him the seriousness of where he was going, even if the conduct in this case, even though he was minor or minimal, I think that his six months with adults being the youngest, one of the youngest at the MDC has really impressed upon him the direction he was going

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

in.  And he doesn't want to be one of those individuals at the MDC who are now 20, 30 years older than him, started out just like him.  And he sees them sitting there.  That is not what he wants, and that, I think, is the most significant difference in this case.

THE COURT:  But Tapia himself is what, in his mid 30's?

MS. BARRERA:  Yes.

THE COURT:  Colonia is affiliated with the Mexican Mafia.  So this isn't his first rodeo.  They are not getting a cherry here, are they.  I hear what you are saying, and I also appreciate the fact that the recommended sentence, at least from your standpoint, didn't go any lower than 18 months because I think you would have lost all credibility had you gone any lower than that.

And tell you the truth, I don't know whether or not your client wishes to, you know, make an address on his own behalf, but this may largely turn on what he has got to say for himself.

Lawyers are wonderful because they can articulate a lot of important information a lot better than the clients can often, but in these kinds of cases, when it comes to sentencing, when it comes to me having to make a decision as to whether or not is this the same

speech and the same plea that he makes every time that he is sentenced, that, okay, I have seen the light, I have found God, I am turning my life around.  I am now motivated because I have yet knocked up yet another girl, and I have another child and I want to be there for him.  Can I tell you how many times I have heard this?  Okay.

All right.  Now, I would like to know, and I need to get a feeling basically of whether or not this one is sincere.  And that can't come from you.  You have done a magnificent job for your client, but it is, ultimately, it is in his hands.  Okay.

Now, I would like to hear from the government, but, like I say, if your client wishes to address the court, I really want to hear him.  I really do.

Mr. Jenkins.

LEFT1:  Thank you, your Honor.  Just briefly.

I agree.  I think Mr. Cardenas is lucky to have Ms. Barrera.  I think she did make a passionate plea, and it makes my job difficult because I believe a lot of what she is saying and I want to believe it and I think Mr. Cardenas, at a minimum, wants to believe that the things being said about him are true also with respect to him wanting to change his life, his motivations.  But I am also deeply troubled as the court knows and has pointed out certain facts including that he

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

is 19 and criminal category 6.  Although I do agree that the substance of some of those previous convictions are on the light side, I think the other measure of a criminal history is recency and rapidity and how quickly these points are piling up on top of each other and, as the court and probation office noted, the trajectory of those offenses.  So I think it is not just each offense alone by itself, how bad is it, but what kind of picture it paints of the defendant.  And I think the picture painted here by his criminal history is troubling.

I think that he got an 18-month sentence for assault with a deadly weapon and so, shortly thereafter, was back engaged with individuals that the court is right.  The Colonia Chiques, it is a no-joke gang.  It is a serious gang that commits murders regularly, and defendant Tapia, as the court knows to some degree and will know later when he is brought before this court, is an incredibly violent individual who was involved in a lot.

And this defendant's association with him and the reason I think it crossed the threshold from minimal to minor is the defendant wasn't just the nanny, he didn't just stay in the car during these transactions waiting for him to come back, drop him off, knowing that he was dropping him off for some sort of contraband deal

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

but otherwise just acting as a nanny or chauffeur. He went inside. He participated. He showed one of the informants how to use the weapon.

So that is where I think the threshold from minimal to minor was crossed. I think he was there as defendant Tapia's back up, physical escort, and I think he was there because he liked being there. Defendant Tapia is a well-known individual. He has a lot of power in the Colonia Chiques. And I think unfortunately this defendant clearly has been seduced by that type of power.

And I think in terms of a sentencing position when he just got an 18-month sentence for a serious offense, assault with a deadly weapon. I am not sure exactly how long he served, but, then, goes right back into this type of conduct. The government's position and the reason it is such a low mid range recommendation is we think it is clearly necessary that a significant increase from his previous sentence that had little to no effect on him. This sentence must incorporate that.

And we would submit on that, your Honor. I think the plea agreement and the PSR makes clear that at this point defendant is a danger to the community. I hope he does want to change, but he needs some time to really focus on it in a place where he cannot continue to engage in criminal conduct.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

THE COURT:  Thank you Mr. Jenkins.  All right.

Mr. Cardenas, at the time your plea was taken, you were told that you would be given an opportunity to address the court, and I think the words were you and your attorney will be able to speak on your behalf at the time of sentencing.

Now is that opportunity.  I don't generally suggest, recommend or encourage, but I really would like to hear from you.  What you have to say is going to impact your future.  Okay.  So if you wish, I don't mean to force you too, but if you wish, this is your opportunity to address the court.

THE DEFENDANT:  I have never really like spoken in court, anything.  I don't -- a lot of everything she said is true, and I am really, like -- I never spoke really in none of my courts, you know.

And I have learned a lot.  This has been an eye opener.  It is hard in here.  I am not going to lie. It is not like juvenile hall, you're on your own, you know.

I don't know.  I do regret everything, you know, my past.  Because there is a lot of guys that have made it, you know, through what I have made it.  And, then, down the line, I lost a lot of friends.  They make us seem like real mean like, oh, Colonia Chiques, this

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

and that, but it is not even like that.  It is a dumb cause why we are out there, you know, now that I realize the truth.  I don't believe it is too late.

I am not good at talking either.

THE COURT:  Now would be a good time to get pretty good at it, and if looking at me makes you nervous, why don't you look at your girlfriend.  But I need to hear from you that there is any possibility at all that you are now a different man than the one that was arrested.

THE DEFENDANT:  There is -- I believe I have -- I believe that there is no such thing as Colonia.  You are on your own.  The family is the only one.

So my lady, she has helped me a lot since I have been here.  I am not going to go out there and be with the guys that say they were some of my friends. They are not here for me, you know.

THE COURT:  I read your letter.  I also read the letter of your girlfriend.  Obviously, an intelligent lady.  Very well-written letter.

But I will tell what you troubles me is that these things were in your life before, but, still, you had to find your love in the streets.  She has always been there, but that wasn't good enough.  I am just trying to figure out why is it good enough now because you and that gang are dangerous.  All right.  That wide

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

sweeping injunction was put in place for a reason. You all are a hazard to the community. And, one by one, if necessary, you all should be taken out of circulation.

And, one by one, every one of you will come in here and talk about your disadvantaged upbringing, the fact that you didn't have a male figure in your life, the fact that you all dropped out of high school, the fact that you all began a drug addiction, and, therefore, all of this foolishness needs to be excused. All of the harm that you have done and the people that you have hurt, it should all be excused because not having a father or close family or functional family somehow deprived you of free will and that you weren't able to discern right from wrong.

Well, I desperately want to see your life salvaged, and my view is this: If I have to make a mistake, I would rather make the mistake on the side of being too lenient rather than too harsh. So I am probably not going to give you the 99 years I would like to give you, but I am going to up your term of supervised release. I know everyone loves to get off of paper, but you are not going to get off of paper as quickly as you would probably like which means I will be able to monitor you and make a determination as to whether or not I am making a mistake by not giving you a lengthy prison

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

sentence because if you violate the terms of your supervised release, I am going to max you out.

You can talk to your lawyer about this. All right. You don't care what any court tells you to do. So I know you are not going to care that I am going to order you to disassociate yourself from this gang. Okay. I know you are not. I know it in my heart. You are going to blow that off, and, as soon as you can, you are going to run right back into their arms. All right.

Well, as soon as we discover that that is what has happened, I am going to take you out of circulation, and I don't want to hear about your son. I don't want to hear about what a terrible thing this is going to do to your girlfriend, how she is totally dependent upon you, et cetera. Those are your problems. I am not going to care.

Go like this (nodding) as though you understand. All right.

THE DEFENDANT: Yes, your Honor.

THE COURT: Your life, the future of your family unit is in your hands. So, if, by your conduct, you want to jeopardize your ability to remain with them, that is your choice. So don't come in after the fact and try to lay it on the court as though, somehow, you know, it is the court's fault and the court needs to show you mercy

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

because you are misunderstood or misguided or whatever. No.

You are going to get your break today. If you blow it, I am going to come down on you so hard. Okay. And I won't feel a thing.

All right. Anything else from either attorney?

Mr. Jenkins?

MR. JENKINS: Not at this point, your Honor.

THE COURT: Ms. Barrera?

MS. BARRERA: Nothing else, your Honor.

THE COURT: Okay.

THE COURT: Well, let me deal with the minor versus minimal role argument. I agree with Mr. Jenkins, and I believe this is -- well, it doesn't matter, but I believe that, based upon the facts, that a minor role adjustment is warranted not a minimal role.

This is also, though, not determinative, but it is also part of the plea agreement that the parties understood at the time this matter was negotiated, and I think that was the correct conclusion.

Therefore, having considered the factors enumerated at 18, U.S.C., Section 3553(a) and the advisory guidelines range of 24 to 30 months based upon an offense level of 10 and a criminal history category of

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

6, it is ordered that the defendant shall pay to the United States a special assessment of $100 which is due immediately.

All fines are waived as the court finds that the defendant has established an inability to pay a fine either now or in the immediate future.

When I was typing up the length of imprisonment this morning because I have made several changes, maybe it is a typographical error, but I am going to let it stand.

Pursuant to guideline section -- correction. Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that defendant Jaime Cardenas is hereby committed on Count 2 of the 29-count indictment to the custody of the Bureau of Prisons to be imprisoned for a term of 24 months.

Upon release from imprisonment, defendant shall be placed on supervised release for a term of four years under the following terms and conditions.

MR. JENKINS:  Your Honor, I apologize for interrupting you, but, unfortunately, the statutory maximum for this offense for supervised release is three years.

THE COURT:  All right.  Thank you.

Okay.  On the following terms and conditions:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

One, defendant shall comply with General Order 318 and 01-05.

Two, defendant shall refrain from any unlawful use of a controlled substance.  Defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed eight tests per month as directed by the probation officer.

Three, defendant shall participate in an outpatient substance abuse treatment and counseling program that includes urinalysis, saliva and/or sweat patch testing as directed by the probation officer. Defendant shall abstain from using illicit drugs, alcohol and abusing prescription medications during the period of supervision.

Four, during the course of supervision, the probation officer with the agreement of the defendant and defense counsel may place defendant in a residential drug treatment program approved by the U.S. Probation Office for treatment of narcotic addiction or drug dependency which may include counseling and testing to determine if the defendant has reverted to the use of drugs.  And the defendant shall reside in the treatment program until discharged by the program director and the probation officer.

Five, during the period of community supervision, defendant shall pay the special assessment in accordance with this judgment's orders pertaining to such payment.

Six, when not employed at least part-time and or enrolled in an educational or vocational program, defendant shall perform 20 hours of community service per week as directed by the probation officer.

Seven, defendant may not associate with anyone known to him to be a Colonia Chiques gang member and others known to him to be participants in the Colonia Chiques gang of criminal activities with the exception of his family members.  He may not wear, display, use or possess any gang insignia, emblems, badges, buttons, caps, hats, jackets or any other clothing that defendant knows evidence affiliation with the Colonia Chiques gang. He may not display any signs or gestures that defendant knows evidence affiliation with the Colonia Chiques gang. And this also includes clothing bearing the insignia of the Dallas Cowboys football team.

Next, upon reasonable suspicion, the defendant is in violation of any of his terms of supervised release, defendant may be subject to search of his person, place and residence by any law enforcement agency at any time of the day or night.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

And, nine, the defendant shall cooperate in the collection of a DNA sample from himself.

The court is mindful of its obligations under 3553(a) that the sentence imposed should be sufficient but not greater than necessary to comply with the purposes set forth in 3553(a)(2).

Specifically, the court has considered the nature and circumstances of the offense, the history and characteristics of the defendant.  The court has assessed the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training or medical or other correctional treatment in the most effective manner.

Presently before the court is a 19-year-old offender who has plead guilty to conspiracy to engage in the business of dealing in firearms without a license. Mr. Cardenas participated in a conspiracy in which he was involved with a firearms trafficking organization for the purpose of trafficking in illegal firearms without a license.

In furtherance of the conspiracy, Cardenas

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

assisted codefendant Luis Tapia who was the leader of the FTO. Mr. Cardenas aided Mr. Tapia by transporting him to meetings and attending meetings with him that involved the sale of firearms.

On August 25th of 2011, Mr. Cardenas sold three handguns to a confidential informant in exchange for $1400. Mr. Cardenas has sustained numerous prior juvenile convictions for offenses including theft, resisting or obstructing a police officer, removal of electronic monitoring device, assault and/or battery on school grounds, disobedience of a court order regarding gang injunction, disturbing the peace and assault with a deadly weapon. He also has outstanding an active bench warrant.

Mr. Cardenas' father left home when he was age 3. While growing up, he was raised by his mother who struggled financially to provide for Cardenas and his siblings. Due to their impoverished conditions Mr. C recalls instances wherein he slept in the car because the family had been evicted for a period of time. He lived with his grandparents.

It appears that the death of his grandfather was difficult for him to absorb due to their close relationship. It also appears that he experienced both verbal and perhaps physical abuse at the hands of his

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

mother's boyfriend.

He has now a 4-month-old son from his current relationship. It appears that that relationship does provide some emotional support notwithstanding his arrest in this case.

Although probation has not independently verified his employment information, it is reported that for the last two years prior to his arrest, he was employed by the City of Oxnard as a landscaper. He also reportedly has earned his GED while in a juvenile facility. All of this gives the court some hope that Mr. Cardenas will, in fact, turn his life around.

You have the right, sir, to appeal your conviction if you believe that your guilty plea was unlawful or involuntary or if there was some other fundamental defect in the proceedings that was not waived by your guilty plea.

You also have the right to appeal your sentence under some circumstances particularly if you believe your sentence is contrary to the law. However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement that waives some or all of your right to appeal the sentence itself.

In this particular case, specifically, at

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Paragraph 15 of your plea agreement, you have agreed that you will waive your right to appeal so long as the total term of imprisonment imposed was no more than 36 months.

Such agreements are generally enforceable.  If you believe your waiver of appeal is unenforceable, you may present that theory to the court of appeals.  With few exceptions, a notice of appeal must be filed within 14 days of judgment being entered.

Do you understand that, sir?

THE DEFENDANT:  Yes.

THE COURT:  If you are unable to afford a transcript of the record in this case, one will be provided at government expense.  If you are unable to pay the cost of an appeal or the filing fee, you may apply within 14 days for a waiver.

If you do not have an attorney to act on your behalf and if you request it, the Clerk of the Court will prepare and file a notice of appeal on your behalf. Again, you must make the request within 14 days.

The notice of appeal must designate the judgment or order appealed from and the fact that you are appealing to the Court of Appeals.  It should designate that portion of the proceedings not already on file that you deem necessary for the reporter to include.

Also in its consideration, the court has

evaluated the sentencing guidelines as required by 18,

U.S.C., Section 3553(a)(4) and finds the calculations of

suggested sentence therein under the present

circumstances for this defendant to be reasonable.  The

court therefore sentences the defendant as previously

stated.

You are remanded now, sir, to the custody of

the United States Marshal for delivery to the Bureau of

Prisons.

Is there anything further from the government?

MR. JENKINS:  Yes, your Honor.  In the interests

of justice, we would move to dismiss all remaining counts

as to this defendant only.

THE COURT:  All right.  All remaining counts as to

this defendant are dismissed in the interests of justice.

Ms. Barrera.

MS. BARRERA:  Nothing else, your Honor.  Thank

you.

THE COURT:  All right.

Because of your small child, I will make the

recommendation for a placement in Southern California.

All right.

MR. JENKINS:  Thank you, your Honor.

(Proceedings concluded.)

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

                              CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28,

United States Code, the foregoing is a true and correct

transcript of the stenographically reported proceedings held

in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.

Date:  August 1, 2014


 /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR


UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA