NICOLA T. HANNA
United States Attorney
BRANDON T. FOX
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
CAMERON L. SCHROEDER (Cal. Bar No. 255016)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-2091/0596
      Facsimile:  (213) 894-6436
      E-mail:     cameron.schroeder@usdoj.gov
                  mack.jenkins@usdoj.gov

Attorneys for Respondent
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MANUEL TAPIA,<br><br>          Petitioner-Defendant,<br><br>               v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent-Plaintiff. | Nos. CV 19-71-ODW<br>     CR 11-1068-ODW<br><br>OPPOSITION TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; DECLARATION OF BRIAN NEWMAN; DECLARATION OF MARILYN BEDNARSKI; DECLARATION OF CAMERON L. SCHROEDER |

     Respondent United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its Opposition to Defendant Luis Manuel Tapia's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence.

     This opposition is based upon the attached memorandum of points and authorities, the attached Declarations of Brian Newman, Marilyn

//

Bednarski, and Cameron L. Schroeder, and the files and records in the underlying criminal case docket, CR 11-1068-ODW.

Dated: August 22, 2019                    Respectfully submitted,

                                          NICOLA T. HANNA
                                          United States Attorney

                                          BRANDON T. FOX
                                          Assistant United States Attorney
                                          Chief, Criminal Division


                                                /s/ _____
                                          MACK E. JENKINS
                                          CAMERON L. SCHROEDER
                                          Assistant United States Attorneys

                                          Attorneys for Respondent
                                          UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant-Petitioner Luis Manuel Tapia ("defendant") has filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (the "Petition" or "Pet."). See CR[1] Dkt. No. 395.  Defendant alleges as grounds for relief that his counsel provided ineffective assistance by failing to inform him that conviction at trial would subject him to a statutory mandatory minimum sentence.  (Pet. at 6-8.)  Defendant alleges that if he had understood this, he would have accepted one of the government's plea offers.  (Id.)  As described in the attached declarations, this claim is both contrary to fact and implausible on its face.  Both of defendant's counsel advised him of the offers made by the government and the corresponding consequences of failing to accept those offers and proceeding to trial – as, indeed, was highlighted by the government in written correspondence when it made each offer.  The Court should deny defendant's petition.

### II.    PROCEDURAL AND FACTUAL BACKGROUND

Defendant was charged in an indictment filed on November 8, 2011, with violations of 21 U.S.C. § 846: Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances; 18 U.S.C. § 371: Conspiracy to Engage in the Business of Dealing in Firearms without a License; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(viii), (b)(1)(B)(viii), (b)(1)(C): Possession with Intent to Distribute and Distribution of Heroin, Methamphetamine, and Cocaine; 18 U.S.C. § 924(c)(1)(A): Use and Carry a Firearm During

---

[1] "CR" refers to the clerk's record in United States v. Luis Tapia, et al., No. CR 11-1068-ODW.

and in Relation to, and Possession of a Firearm in Furtherance of, a Drug Trafficking Crime; 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm; 26 U.S.C. § 5861(e): Illegal Transfer of a Firearm; and 21 U.S.C. §§ 848(a),(b),(s): Continuing Criminal Enterprise ("CCE").  (CR 34.)  On November 18, 2011, the government filed an Information pursuant to 21 U.S.C. § 851, including two counts alleging prior felony drug offenses for defendant.  (CR 50.)

On February 9, 2012, the government extended a plea offer to defendant via his counsel at that time, attorney Brian Newman. (Exh. A to Declaration of Cameron L. Schroeder ("Schroeder Decl.").) That offer included an agreement by the government to dismiss one of the counts under the 851 Information, and as advised in the plea agreement, that resulted in a mandatory minimum sentence of 20 years' imprisonment based on the sole remaining 851 count.  (Id.) As explicitly stated in the plea agreement, "Defendant further understands that because defendant admits that defendant committed a violation of Title 21, United States Code, Section 841(a), (b)(1)(A), as charged in count One of the indictment, after a prior conviction for a felony drug offense had become final, as alleged in the information filed pursuant to Title 21, United States Code, Section 851 on 18 November 2011, the mandatory minimum sentence that the Court must impose for this violation is: 20 years' imprisonment; a 10-year period of supervised release; and a mandatory special assessment of $100."  (Id., emphasis added.)  Defendant therefore was specifically put on notice by the terms of the pretrial plea offer that the Court did not have discretion regarding mandatory minimum sentences.  Further, as highlighted by the government in the email transmitting the offer, "As we briefly discussed, the charges

2

against your client are extremely serious and <u>he faces a mandatory minimum sentence of life imprisonment on two fronts</u> based off of (i) the Continuing Criminal Enterprise charge (21 USC 848(b),(s)) and/or (ii) the two 851 enhancements that we filed." (<u>Id.</u>, emphasis added.) Mr. Newman transmitted the offer to his client, who declined to accept it. (<u>See</u> Declaration of Brian A. Newman ("Newman Decl.") at ¶ 5.)

The government then met with Mr. Newman to discuss the case, following which it provided a revised plea offer. (<u>See</u> Exh. B. to Schroeder Decl.) Again, in its transmittal email, the government highlighted that its offer included an agreement to "dismiss all remaining counts that would otherwise mandate a *life* sentence." (<u>Id.</u>, emphasis in original.) The plea offer itself contained the same language explaining the effect of mandatory sentences as the previous offer, that is, that defendant understood that there was a mandatory minimum sentence that the Court <u>must</u> impose of 20 years' imprisonment, after the government dismissed one of the counts in the 851 information pursuant to the plea agreement. (<u>Id.</u>, emphasis added.) After various extensions to permit defendant additional time to consider this plea offer, defendant declined it, and thereafter his counsel withdrew from the case and was replaced with Ms. Bednarski. (Newman Decl. at ¶¶ 6-7.) On August 12, 2013, Ms. Bednarski took over as counsel for defendant and remained his counsel through pretrial proceedings, plea negotiations with the government, trial, and sentencing. (Bednarski Decl. at ¶ 2.)

On March 20, 2014, after meeting with Ms. Bednarski, and despite the prior extensions and rejections, the government agreed to once again extend a plea offer, this time offering to dismiss

both 851 counts, for a 15-year mandatory minimum, and an agreed-upon non-binding range of 18-22 years imprisonment.  (See Exh. C to Schroeder Decl.)  Defendant declined that offer as well, and the government wrote in a letter to confirm that declination that "you and your client have declined a plea offer that would have removed the multiple mandatory life sentences he currently faces if convicted at trial and replaced them with a mandatory minimum term of 15 years."  (Exh. D to Schroeder Decl., emphasis added.)  According to Ms. Bednarski, defendant informed her that he would only take a plea agreement that was binding on the Court for 15 years' imprisonment.  (Bednarski Decl. at ¶ 7.)  Defendant told Ms. Bednarski that part of the reason he was rejecting the government's plea offers was because he felt that 20 years' custody was "like life in prison," particularly given a health condition.  (Bednarski Decl. ¶¶ 8-9.)  The government rejected defendant's counter-offer for a binding 15-year sentence.  (Bednarski Decl. at ¶ 7.)

On March 25, 2014, Ms. Bednarksi again met with defendant about the plea offer from the government; they spoke on that day about "choice 1," an 18—22 year joint sentencing recommendation range by the parties, which was not binding on the Court, and "choice 2," which represented a trial after which, if convicted, defendant would face a mandatory minimum of 10 years' custody for the drugs, increased to a mandatory minimum of 20 years' custody with one prior felony drug conviction, and increased to a mandatory term of life in prison with two such priors.  (Bednarski Decl. at ¶ 10.)  Ms. Bednarski told defendant that the CCE charge also generated a mandatory minimum term of life in prison.  (Id.)

Defendant thereafter proceeded to trial.  On September 12, 2014, the jury returned verdicts of guilty on all counts.  (CR 283.) They made specific findings with regard to drug quantity on every count for which such a finding was relevant.  (Id.)  They also made specific findings regarding the CCE charge as required to trigger statutory thresholds.  (Id.)

Even post-conviction, Ms. Bednarksi continued to attempt to negotiate away defendant's mandatory life sentence, in exchange for defendant accepting a 25-year mandatory minimum and waiving his appellate rights; defendant rejected that proposal.  (Bednarski ¶ 12.)  At sentencing, Ms. Bednarski proffered the same argument she had raised when negotiating a plea offer from the government – she did not believe defendant's conduct warranted a mandatory life sentence and thought such a sentence was disproportionate.  However, Ms. Bednarski always knew defendant faced a mandatory life sentence if convicted at trial.  (Bednarski Decl. at ¶¶ 4, 11, 13.)  Ms. Bednarski never argued the mandatory sentence did not apply, only that she thought the application of that particular mandatory minimum here was unconstitutional under the Eighth Amendment's prohibition against cruel and unusual punishment.  (Id. at ¶ 13.)

Defendant was sentenced on April 27, 2015 to life in prison plus 55 years, as was mandated by his convictions.  (CR 319, 322.) At sentencing, Count 1 of the indictment (the drug trafficking conspiracy) was vacated by agreement of the parties as a lesser-included offense of Count 29, the CCE count.  (CR 319.)

Defendant appealed his convictions on grounds not relevant to the instant petition; each of his convictions was affirmed by the Ninth Circuit Court of Appeals.  (CR 331, 388.)  After rehearing and

then certiorari was denied, defendant obtained counsel and timely filed the instant petition on January 4, 2019.  (CR 395.)

**III. ARGUMENT**

> **A.    DEFENDANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL**

In his Petition, defendant's sole argument is that "but for counsel's misadvice, [he] would have accepted the government's plea offer."  (Pet. at 6.)  More specifically, defendant claims neither attorney "advise[d] Tapia of the mandatory consequences related to the Government's filing of the Information pursuant to 21 U.S.C. § 851." (Id.)[2]  This claim is flatly refuted by the record established by both of his previous counsel's independent declarations and the attached exhibits.  Specifically: (a) neither counsel provided misadvice; (b) the advice they did provide was accurate and addressed the mandatory consequences of proceeding to trial; (c) defendant was well aware of the multiple ways in which he could receive a life sentence; and (d) defendant repeatedly and specifically rejected any plea offers that did not guarantee he would receive his desired 10-or 15-year sentence.

> 1.    Defendant Must Show Both Deficiency and Prejudice

In order to state a viable claim for ineffective assistance of counsel, defendant must show, in light of all the circumstances, that: (1) his counsel's performance was deficient, falling below an

---

[2] Curiously, defendant's declaration does not claim that he was unaware that he also faced a mandatory sentence under Count 29, the CCE count.  Accordingly, the government takes this omission that defendant was advised that he faced a mandatory life sentence on Count 29, which further undercuts the merits of his instant claim since he always knew he faced the possibility of a life sentence if he proceeded to trial.

objective standard of reasonableness; and (2) defendant was prejudiced as a result.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  When evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  United States v. Bosch, 914 F.2d 1239, 1244 (9th Cir. 1990).  To establish prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  If it is possible to dispose of an ineffectiveness claim on the ground of lack of prejudice, a court may do so without examining the performance prong.  Id. at 697.

### 2.   Defendant Fails Both Strickland Prongs

Defendant's argument plainly falls short of both prongs under Strickland.  First, the record is plain that both of defendant's counsel knew the various ways in which defendant faced a potential mandatory life term in prison.  (Newman Decl. ¶ at 4; Bednarski Decl. at ¶¶ 3, 6-12). They both aver that they knew the applicable laws from their decades of experience in this area, and documentary evidence confirms that this was a frequent topic of negotiation with the government.  (Bednarski Decl. at ¶¶ 4, 10-11.)  Most specifically, Ms. Bednarksi confirmed that she discussed a potential mandatory life sentence with her client, and this conversation is corroborated by her notes.  (Bednarski Decl. at ¶ 10.)  Further, defendant was conveyed plea offers that discussed the application of 851 enhancements and mandatory minimums, including that the Court "must" impose them.  (Ex. A.)  The government also explicitly and

7

repeatedly highlighted to defendant's counsel the mandatory life consequences of a conviction at trial.  (Exs. B-C.)  Besides defendant's self-serving declaration, there is nothing in the record that refutes or even suggests that the sentencing consequences were not well known to both of his counsel and repeatedly conveyed to him, as it was the focus of his decision-making over many months regarding whether to proceed to trial.  In light of this substantial and consistent record, defendant's Petition and declaration appear to be no more than buyer's remorse with respect to his decision to proceed to trial.

Defendant's suggestion that Ms. Bednarski's Eighth Amendment argument at sentencing regarding the severity of defendant's potential sentence transformed her performance to that below an objective standard of reasonableness is equally unsupportable. (Pet. at 9.)  She did not argue that there was no mandatory minimum, she specifically elected to pursue a Constitutional argument because of the mandatory minimum, which otherwise precluded her from arguing for a lower sentence based on any other factors.  (Bednarski Decl. ¶ 13.)  Her argument, while certainly a legal longshot, was the only shot, and allowed her to make a record for her client about why his sentence was purportedly disproportionate to his conduct.  Nothing from the sentencing hearing or anywhere else in the record casts doubt on Ms. Bednarski's clearly held understanding that, based on the charges (and then convictions) against defendant, he faced multiple life sentences.  Thus, defendant has failed to establish any error by either counsel, much less the types and egregiousness of errors required by Strickland to establish ineffective assistance.  Strickland, 466 U.S. at 687.

Second, the record establishes that defendant, in part due to claimed health issues, steadfastly maintained that 15 years was the maximum sentencing exposure he was willing to accept as part of a plea.  (Bednarksi Decl. at ¶¶ 6-9.)  He specifically rejected a plea where he could have received 20 years because he equated the 20-year sentence to the same scenario he faced after losing at trial – life in prison.  (Bednarski Decl. at ¶¶ 8-9.)  Accordingly, nothing in the record supports defendant's second self-serving claim that had he been advised of the possibility of a mandatory life sentence he would have accepted one of the multiple government plea offers. Instead, the weight of the evidence and common sense establish that defendant now seeks a "do-over" of his thoroughly deliberated and discussed choice to proceed to trial in spite of the severe consequences.

**B.    THIS COURT SHOULD DENY THE REQUEST FOR AN EVIDENTIARY HEARING AND ANY FUTURE REQUEST FOR A CERTIFICATE OF APPEALABILITY**

Not every Section 2255 Petition warrants an evidentiary hearing.  Section 2255 requires only that the district court "give the prisoner's claim 'careful consideration and plenary processing, including full opportunity for presentation of the relevant facts.'" United States v. Watts, 841 F.2d 275, 277 (9th Cir. 1988) (per curiam) (quoting Blackledge v. Allison, 431 U.S. 63, 82-83 (1977). If the motion and the files and the records of the case conclusively show that the prisoner is not entitled to relief, the Court can make credibility determinations and deny the motion without an evidentiary hearing.  Watts, 841 F.2d at 277-78; see also Shah v. United States, 878 F.2d 1156, 1160-61 (9th Cir. 1989) (record before district court was adequate for conclusive determination that

9

defendant's claim was meritless, without need for evidentiary hearing).  In this case, petitioner's claims are not supported by the record or by common sense, but simply reflect an ex-post regret for defendant's prior repeated decisions not to accept the government's plea offers.  Such a context supports an adverse credibility determination on the record before the Court.  On the other side of the inquiry, two independent defense counsel with decades of experience and who understand this common area of federal criminal law – the applicability of mandatory minimums and 851 enchantments – have sworn that they knew this information and discussed it with their client.  They handled this matter consistent with their practice and as they would every other similarly situated case.  The record, Ms. Bednarski's contemporaneous notes, the government's exhibits, and logic all support the credibility of Mr. Newman's and Ms. Bednarski's declarations and further refute any need for an evidentiary hearing on this matter.

Any future request for a Certificate of Appealability ("COA") should also be denied.  As discussed above, defendant's claim has no merit.  Nor has defendant "made a substantial showing of the denial of a constitutional right" as to any issue, which is required if defendant is to obtain a COA in order to appeal this Court's ruling. See 28 U.S.C. §§ 2253(c)(2), (c)(3).  The government therefore requests that this Court deny any request for a COA.

**IV.      CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.