DECLARATION OF MARILYN BEDNARSKI

I, Marilyn Bednarksi, declare as follows:

1. I am an attorney licensed to practice law before the state and federal courts in California, and have been so admitted since 1982. I have been on the Federal Indigent Defense Panel since 2003. I make this declaration in support of the Government's Opposition to Defendant Luis Tapia's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.

2. Beginning August 12, 2013, and following the withdrawal of prior counsel Brian Newman, I was Luis Tapia's counsel of record in the matter of United States v. Luis Tapia, et al., No. CR 11-1068-ODW. I represented Mr. Tapia in connection with his pretrial proceedings, plea negotiations with the government, trial, and sentencing.

3. While representing Mr. Tapia, I met with him several times; I also communicated with him via letter and telephone. I took dated notes of my meetings with him. During my representation, the government extended Mr. Tapia plea offers that would allow the Court to sentence Mr. Tapia to a sentence of less than life in prison. I discussed those offers with Mr. Tapia, and discussed with him the risks and consequences of proceeding to trial instead of accepting the government's offers.

4. As an experienced member of the Federal Indigent Defense Panel, I am well aware of the effect of the two-count Information filed by the government pursuant to 21 U.S.C. § 851 in this matter. In particular, I am aware that if coupled with conviction on any of several charges in the Indictment in this matter, that Information would result in a mandatory minimum sentence of life imprisonment.

Similarly, I am familiar with the Continuing Criminal Enterprise charge under 21 U.S.C. § 848, and in particular was aware that as charged by the government in this case, that charge would also require a mandatory sentence of life imprisonment upon conviction. I was aware of all the foregoing facts in this paragraph from the beginning of my representation of Mr. Tapia in this matter.

5. In preparing to respond to the Court's order of a limited waiver of attorney-client privilege, I reviewed six boxes of material and culled out the documents responsive to the order, which I produced (in redacted form) to the government.

6. My notes of my meetings with Mr. Tapia reflect that I communicated the government plea offers to Mr. Tapia and that he rejected the offers, including the best offer I was able to obtain for him, which was a recommendation for an 18-to-22-year recommendation range stipulated by the parties (but not binding on the Court).

7. My notes reflect that Mr. Tapia talked to me on multiple occasions about a binding plea agreement. Specifically, he told me that he was willing to take a binding plea agreement for 15 years' imprisonment. My documents in the production show my numerous communications on the phone, in meetings, in letters and emails to the government to try to get him a binding offer but that the government rejected such an offer.

8. My August 22, 2013 notes reflect that Mr. Tapia would not accept a plea offer where there was a mandatory minimum of 20 years' custody but would accept a plea offer if the mandatory minimum was 10

2

years' custody. (Bates 006.)[1]  I knew early in my representation of him that he had been diagnosed with a serious medical condition and Mr. Tapia believed that his life was going to be significantly shortened because of that condition.

9.    My notes reflect on December 9, 2013, Mr. Tapia told me that 20 years' custody was like life in prison.  (Bates 0025.)

10.   My notes on March 25, 2014, reflect that Mr. Tapia and I spoke on that day about "choice 1" the 18-22 year joint sentencing recommendation range, which was not binding, and "choice 2," which represented a trial after which, if convicted, Mr. Tapia would face a mandatory minimum of 10 years' custody for the drugs, increased to a mandatory minimum of 20 years' custody with one prior felony drug conviction and increased to a mandatory term of life in prison with two such priors.  (Bates 0072.)  I noted that the CCE charge also generated a mandatory minimum term of life in prison and I further noted a factual issue relevant to a defense to the CCE charge that involved arguing that Mr. Tapia did not obtain significant income as part of his operation of any CCE.  (Bates 0072.)

11.   My notes on March 31, 2014, reflect that I knew several of the counts charged against Mr. Tapia had mandatory life terms. (Bates 0020.)

12.   My notes from November 17, 2014, reflect after the trial but before sentencing-when I was still trying to negotiate with the government for a term of years even though Mr. Tapia had been convicted of counts generating mandatory life in prison – I proposed

---

[1] The Bates numbers reflect the production I provided the government in response to the Court's order regarding Mr. Tapia's § 2255 motion.  True and correct copies of certain documents from this production are attached hereto.

3

to Mr. Tapia to negotiate to take the now mandatory life in prison term off of the table and agree to 25 as a mandatory minimum but leave open the sentencing to the Judge.  He said he would agree to 15 years' custody. (Bates 0015.)

13.  My notes for arguments to make at Mr. Tapia's sentencing hearing (April 27, 2015) about the Eighth Amendment reflect my effort to convince Judge Wright that the sentences of life were disproportionate to the crimes committed. I still would make those arguments.  I always disagreed with what I saw as overcharging the case with brutal mandatory minimum counts including the two prior 851s and the CCE count. I made the Eighth Amendment argument because I had to find a way to fight against imposition of a life sentence. It is not that I did not understand that multiple counts carried mandatory life terms, it was that I believed then, as I still believe, that it never should have been a mandatory life case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on August 20 , 2019.

MARILYN BEDNARSKI

4



DOB
1-19-76    Mtg md.    8/22/13    [ p1073 ]

Would agree
to 10-15
let prob deced
Min to du
not
Min 20

CO

has 2 pnas

1  is > 20 yr  too old

2- 851  Filed as soon as
got here

1976 Ban

1991

1995 1st adult conv
is adult conred
for 3yrs                [ 18 ]

2003/4
Diagnosed by HepC

C Off  its
in
off

2 adult convicheos

poss sale 1995
.45 20 rock
Felony (3years)

not Simple poss. Foly
And 16 mo
+ 3 yr pna = 4y.

Preplea repat

∆ willing to get
to scool a career
offender

Most time Sec Housing

BEDNARSKI 006

Medical records review

diagnosis 2003
blood test Hep C antibody
11/15/11

Serum [illegible] [illegible]
neck

Bop won't start
interferon + Ribavira
therapy be cause
length stay @ moc
is indefinite

p 124 5/9/2013
by [illegible]

re settlement
20 is life,
would take 10 yr man up dismiss 9 851s
+ let judge sentence hs
as seen fit
let judge has discretion

never got a plea offer
851s filed

3

BEDNARSKI 0025



BEDNARSKI 0072

p 4

[redacted]

advised Luis
25 yr man - term
take life off
but open to Judge argur

would take 15

[redacted]

[redacted]

BEDNARSKI 0015